IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 113-007 |
| | ) | |
| BRIAN KEITH ALEXANDER | ) | |

## ORDER

After a careful, *de novo* review of the record, the Court concurs with the Magistrate Judge's Report and Recommendation ("R&R"), to which objections have been filed (doc. no. 49.)[1] Following two evidentiary hearings, the Magistrate Judge recommended denial of Defendant's motion to suppress evidence because (1) the initial encounter between Defendant and the police investigators, occurring when the investigators parked next to Defendant's parked vehicle and engaged in conversation, was casual, non-coercive, and absent of any threatening or intimidating behavior; (2) a seizure occurred only when, from their vantage point standing outside of Defendant's car, the investigators spotted a bag of pills in the center console of Defendant's car and ordered Defendant and his passenger to exit the vehicle; and (3) the bag of pills clearly provided a reasonable suspicion of criminal activity to justify the seizure. (See doc. no. 44.)

The crux of Defendant's argument is that the encounter was coercive and non-consensual from the outset because the investigators, Julio Concepcion and Michael

---

[1] Defendant was granted an extension of time in which to file objections to the R&R. (Doc. no. 48.)

Dodaro, parked their car in the roadway alongside Defendant's car, which was parked curbside, and walked to each side of Defendant's vehicle to question Defendant and his passenger, Mr. Charles M. Frails. The Court adopts in full the Magistrate Judge's findings of fact and conclusions of law, and will take time here only to explain why the four decisions discussed at length by Defendant do not support the conclusion that suppression is warranted. See Miller v. Hargret, 458 F.3d 1251 (11th Cir. 2006); United States v. Flores-Uriostegui, 1:09-CR-00438-JEC, 2010 WL 8675217 (N.D. Ga. Aug. 9, 2010); see also United States v. Berry, 670 F.2d 583, 597 (5th Cir. 1982); United States v. Beck, 602 F.2d 726 (5th Cir. 1979); United States v. Robinson, 535 F.2d 881 (5th Cir. 1976).

Any discussion of the issue must start with Miller, in which the Court stated that a person is not seized if "a reasonable person would feel free to terminate the encounter" with the police. Miller, 458 F.3d at 1257. Factors relevant to this "free to leave" inquiry include whether a citizen's path is blocked or impeded, the display of weapons, and any physical touching of the suspect. Id. In Miller, an officer observed a vehicle weave and make an improper turn, then park. Id. at 1253. The officer parked his patrol car directly behind the suspect's vehicle, turned on his window lights, and beeped his siren before exiting his patrol car. Id. Because the suspect had parked in a parking space that impeded any forward movement, the police officer blocked the suspect from leaving by parking behind him. Id. at 1258. The officer approached the driver's side window and, when the suspect lowered his window, the officer detected the odor of alcohol and noticed the suspect had "bloodshot and glassy" eyes. Id. at 1253. The officer thus arrested the suspect for driving under the influence. Id. at 1254.

2

The Eleventh Circuit affirmed the district court's ruling that the officer did not seize the suspect until his arrest. Id. at 1256-58. The Eleventh Circuit enumerated the following facts to support a finding that the suspect was not seized prior to his arrest: (1) there was only a brief delay between the officer parking his patrol car and approaching the suspect's car; (2) the officer did not draw his weapon, give commands or instructions, or activate his roof lights; and (3) the suspect did not express a desire or intention to exit the parking lot in his vehicle. Id. at 1257. In addition, the Eleventh Circuit found that, even though the suspect could not back out of the parking spot to leave in his vehicle, the officer parking behind the vehicle was not enough to constitute a seizure because the suspect did not demonstrate any intent to leave. Id. at 1258.

In the present case, the facts weigh more strongly against a finding that a seizure occurred initially than the facts at issue in Miller. As in Miller, there was a brief delay between the investigators parking their vehicle and approaching Defendant's car, the investigators never drew their weapons nor gave any commands or instructions to Defendant, the Defendant's car was not running, and Mr. Frails testified that they had no intention to leave at that time and did not attempt to leave. (See doc. no. 44, 8, 10-11.) Additionally, unlike Miller, the patrol car's positioning did not obstruct Defendant's car because, as Investigator Concepcion testified, there were no cars parked either in front of or behind Defendant's car. (Id. at 8.) Moreover, unlike Invs. Dodaro and Concepcion, the officer in Miller displayed authority during the initial encounter by turning on his lights, beeping his siren before exiting his patrol car, and asking for identification. (Id.; Miller, 458 F.3d at 1258.)

3

Defendant also relies on Flores, but he cites the August 2010 R&R of the Magistrate Judge ("Flores I") without mentioning the May 2012 adoption order entered by U.S. District Judge Julie E. Carnes, 2012 WL 1884036 (N.D. Ga. May 22, 2012) ("Flores II"). In Flores I, the officers became suspicious when they observed the suspects in a high-crime area sitting motionless in a parked car for several minutes, making no effort to move or exit the vehicle. See Flores I, 2010 WL 8675217, at *2. The officers approached the vehicle, without turning on their blue lights, and parked the patrol car in a position that at least partially blocked the rear of the suspects' vehicle, which was parked in a parking space and facing an apartment building. Id. One officer testified that the suspects would have had a hard time backing their car out, while the other officer testified that they would not have been physically able to back out. Id. However, both officers testified that the suspects were not free to leave as soon as they parked their patrol car. Id.

In Flores I, the defendants argued that their initial encounter with the officers was a warrantless seizure and the government responded that "the observation of [d]efendants sitting motionless for two to three minutes inside a vehicle in a high-crime area support[ed] a reasonable suspicion that criminal activity was afoot and justifie[d] their seizure . . . ." Id. at *3. Relying on case law from other circuits and the Fifth Circuit's decision in Berry from 1982, the Magistrate Judge found that "a reasonable person in Defendants' position would not have felt free to leave upon the blocking of his or her car by a marked patrol car." Id. at *5. Accordingly, the Magistrate Judge concluded that the officers lacked reasonable suspicion to justify a seizure at the time they parked their patrol car behind the defendants' car. Id. at *5-*6.

4

In Flores II, Judge Carnes adopted the Magistrate Judge's ultimate conclusion that the quantum of suspicion possessed by the officers was insufficient to give rise to reasonable suspicion at the time the officers blocked defendants' car with their patrol vehicle. See Flores II, 2012 WL 1884036, at *5. Importantly, however, Judge Carnes disagreed with the Magistrate Judge on the subsidiary issue of whether the blocking of a suspect's vehicle, by itself, necessitates the finding of a seizure. Id. at *6, *10. Judge Carnes rejected the authority from other circuits finding that physical obstruction of a person's vehicle by a marked patrol car alone would lead a reasonable person to believe he was not free to leave. Id. at *6-*9. Citing Miller, Judge Carnes explained that the "free to leave" inquiry is fact-intensive and that blocking the suspects' vehicle is not dispositive of the analysis. Id. at *6. Judge Carnes thus concluded that, under Miller, "the Government might have prevailed had it argued that the officer's act of parking their car behind the defendants did not constitute a seizure." Id. at *9. However, the government failed to make this argument and instead conceded that a seizure occurred, but asserted that the officers had reasonable suspicion to justify the warrantless seizure. Id. at *5-*9.

In the present case, the government did make this argument, and the Magistrate Judge correctly determined that merely parking alongside a suspect's vehicle does not constitute a seizure when the suspect's vehicle is not blocked in front or behind. Indeed, the facts are even more favorable to the government than in Flores I and II because Inv. Concepcion testified that Defendant and Mr. Frails were free to leave and could have terminated the encounter by simply pulling their car forward or backing it up, but expressed no desire or display any sign of an intent to do so.

5

The Fifth Circuit cases cited by Defendant are factually distinguishable and do not convince the Court that it should depart from the Eleventh Circuit's more recent holding in Miller.[2] In Beck, two officers pulled up next to the suspect's vehicle and engaged the suspects in conversation. When the suspects' nervousness and furtive movements made the officers suspicious, the officers decided to get out of their vehicle to investigate further, but first had to pull their patrol car forward because it was too close to the parked vehicle for the officer on the driver's side to get out. The court found that a stop occurred because, "[b]y pulling so close to the Chevrolet, the officers effectively restrained the movement of Beck and his passenger, United States v. Robinson, 535 F.2d 881, 883 n.2 (5th Cir. 1976); from the record it is readily apparent that they were 'not free to ignore the officer(s) and proceed on (their) way.'" Id. at 729. In stark contrast, the Magistrate Judge here correctly found that the patrol car was not nearly so close to Defendant's car, and that there was always enough space in between to open a door. (Doc. no. 44, p. 10.)

Robinson is no more controlling or analogous than Beck. Indeed, the Fifth Circuit in that case, decided 37 years ago, began with an implied assumption that a seizure had occurred the moment the police officers approached the suspect's vehicle. Robinson, 535 F.2d at 883. The court thus never conducted the Miller "free to leave" analysis to determine whether a reasonable person would have felt free to terminate the encounter, but instead considered whether the officers had a reasonable suspicion that criminal activity was afoot at the time of this assumed seizure. Id. This implied assumption of a seizure is too thin a reed on which to erect anything of substance in the present case, especially in light of Miller.

---

[2]See also Perez, 443 F.3d 772 (11th Cir. 2006); Miller, 458 F.3d 1251 (11th Cir. 2006); United States v. Edwards, 105-CR-0097-WSD-JFK, 2007 WL 2479288 (N.D. Ga. Aug. 28, 2007) aff'd, 307 F. App'x 340 (11th Cir. 2009) (*per curiam*); Flores II.

6

For these reasons, Defendant's objections are **OVERRULED**, the Report and Recommendation of the Magistrate Judge is **ADOPTED** as the opinion of the Court, and Defendant's motion to suppress is **DENIED**. (See doc. nos. 29, 32.)

SO ORDERED this 13th day of December, 2013, at Augusta, Georgia.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA