IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| BRIAN KEITH ALEXANDER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 115-144 |
| | ) | (Formerly CR 113-007) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at Hazelton USP in Bruceton Mills, West Virginia, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.   BACKGROUND**

   **A.   Indictment**

On January 11, 2013, a grand jury in the Southern District of Georgia charged Petitioner with possession with intent to distribute oxycodone, in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Count One); possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count Three). United States v. Alexander, CR 113-007, doc. no. 1 (S.D. Ga. Jan. 11, 2013) ("CR

113-007"). The Court appointed attorney D. Brooks K. Hudson to represent Petitioner. (Id., doc. no. 4.)

### B. Agreement to Plead Guilty

On January 23, 2014, Petitioner pleaded guilty to Count One, possession with intent to distribute oxycodone, in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and the government agreed to dismiss the remaining counts. (Id., doc. nos. 58-59.) The plea agreement contained a limited waiver of appeal that stated in relevant part:

> The defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of the sentence.

(Id., doc. no. 59, p. 3.) The plea agreement also contained confirmation by Petitioner his attorney met with him "a sufficient number of occasions and for a sufficient period of time to discuss the [Petitioner's] case and receive advice." (Id. at 7.)

### C. Change of Plea Hearing

During the change of plea hearing, U.S. District Court Judge J. Randal Hall established Petitioner's competence to enter a guilty plea if he desired. (Id., doc. no. 70, p. 19.) Petitioner also testified under oath that he was satisfied with the services rendered by Mr. Hudson. (Id. at 8.) Judge Hall asked Petitioner if he understood the charges, to which Petitioner replied, "Yes, sir." (Id. at 7.)

2

Next, Judge Hall asked if Petitioner understood the possible penalties, including the maximum penalty of twenty years of imprisonment. (Id. at 11.) Petitioner confirmed that he understood the possible penalties. (Id. at 14.) Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. (Id. at 8-10.) Among the rights explained, Judge Hall reviewed the right to trial by jury, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, the presumption of innocence, and the right to remain silent. (Id.) Petitioner also affirmed that no one had forced or pressured him to plead guilty, or made him any promises to induce him to plead guilty. (Id. at 3, 11.) Petitioner affirmed no one had predicted, prophesied, or given him any guarantee as to what sentence Judge Hall would impose. (Id. at 14.)

In addition, Judge Hall reviewed the waiver provision in Petitioner's plea agreement, explaining he had "agreed to waive or give up [his] right to appeal [his] conviction and sentence directly or indirectly or collaterally in a post-conviction proceeding on any ground." (Id. at 11.) Judge Hall also explained to Petitioner that he was waiving any right to appeal on any ground unless the court imposed a sentence above the statutory maximum, the sentence exceeded the advisory guideline range, or the government filed an appeal. (Id.) Petitioner confirmed he understood. (Id.)

Next, Judge Hall heard the factual basis for Petitioner's guilty plea from Special Agent Tyra Cunningham with the Bureau of Alcohol, Tobacco, Firearms and Explosives. (Id. at 15.) SA Cunningham testified that on July 9, 2012, law enforcement observed Petitioner and another individual in a vehicle containing contraband in the radio console area of the vehicle. (Id. at 16.) After law enforcement approached the vehicle and ordered

3

Petitioner to exit, law enforcement noticed a handgun in the vehicle. (Id.) Law enforcement took possession of the narcotics and the firearm, and later determined the narcotics were oxycodone and the firearm was stolen. (Id.) SA Cunningham confirmed there were more than forty oxycodone pills packaged for distribution. (Id. at 17.) After his arrest, Petitioner was confirmed as a four-time convicted felon, with previous felonies for aggravated assault and burglary. (Id. at 16-17.) When Judge Hall asked whether Petitioner disagreed with SA Cunningham's testimony, Petitioner replied "No. No, Sir." (Id.)

### D. Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSI") which set Petitioner's base offense level at sixteen, pursuant to U.S.S.G. §2D1.1. (PSI ¶ 16.) The base offense level increased to twenty because Petitioner received an additional four points for obstruction of justice and possessing a firearm. (Id. ¶¶ 17, 20.) However, because Petitioner was a career offender under U.S.S.G. § 4B1.1, his offense level was set at thirty-two. (Id. ¶ 22.) This offense level was decreased three points for acceptance of responsibility to twenty-nine after Petitioner objected to denial of credit and Judge Hall sustained the objection. (Id. ¶¶ 23-25; CR 113-007, doc. no. 72, pp. 3-29.) Petitioner's advisory guideline range was 151 and 188 months imprisonment. (CR 113-007, doc. no. 72, p. 29.) As a career offender, Petitioner received a criminal history category score of VI. (PSI ¶ 36.)

The PSI also contained an "Impact of Plea Agreement" section detailing the benefits Petitioner received by dismissal of Counts Two and Three. (PSI ¶ 72.) According to the PSI, had Petitioner been convicted of Count Two, his guidelines range would have been 360 months to life imprisonment. (Id.) Furthermore, had Petitioner been convicted of Count

4

Three, he would have been designated as an Armed Career Criminal under 18 U.S.C. § 924, and would have faced a mandatory minimum term of fifteen years imprisonment. (Id.) Consequently the PSI concluded the plea agreement had a significant impact on Petitioner's sentence. (Id.)

On September 11, 2014, Judge Hall sentenced Petitioner to 180 months of incarceration, three years supervised release, a $2,500.00 fine, and a $100.00 special assessment. (CR 113-007, doc. no. 67.)

### E.  § 2255 Motion

Petitioner did not file an appeal, but timely filed the instant § 2255 motion. Petitioner raises a single ground for relief, arguing he received ineffective assistance of counsel when his attorney failed to advise him of the option of pleading guilty to all three counts without a plea agreement. (Doc. no. 1, p. 4.) Petitioner claims counsel's failure to advise him of the "straight up" option renders his guilty plea involuntary. (Id.) Petitioner does not ask to withdraw his guilty plea and lose all benefit of the plea agreement. Rather, as relief, Petitioner requests he be resentenced without the appeal waiver provision. (Id. at 13.) As discussed below, Petitioner's claim fails because Petitioner cannot establish any prejudice as a result of the alleged ineffective assistance of counsel.

## II.  DISCUSSION

### A.  There Is No Need For an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where

5

the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Because Petitioner's claim lacks merit as a matter of law, no evidentiary hearing is necessary.

### B. Petitioner Did Not Receive Ineffective Assistance of Counsel Because Any Deficiency in Counsel's Performance Did Not Prejudice Petitioner.

#### 1. Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003). Petitioner must show that counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the

petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

7

would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), cert. denied, 133 S. Ct. 484 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Id. at 56-59.

### 2. Petitioner Suffered No Prejudice from Counsel's Alleged Failure to Inform Him of the "Straight Up" Guilty Plea Option.

Even assuming Mr. Hudson failed to advise Petitioner of the "straight up" option, and further assuming this failure constitutes ineffective assistance, Petitioner is not entitled to relief because he has failed to make a showing of prejudice. To show prejudice, a petitioner must establish a reasonable probability that: (1) he would have pleaded guilty "straight up;" (2) the Court would have accepted his plea; (3) he would have then appealed or collaterally attacked his sentence; and (4) his sentence after that appeal or collateral attack "would have been less severe than under the judgment and sentence that in fact were imposed." Taylor v. United States, No. CR613-004, 2016 WL 742118, at *3 (S.D. Ga. Feb. 24, 2016), report and recommendation adopted, No. CR613-004, 2016 WL 1047050 (S.D. Ga. Mar. 10, 2016), adhered to on denial of reconsideration, No. CR613-004, 2016 WL 1625642 (S.D. Ga. Apr. 21, 2016), and objections overruled, No. CR613-004, 2016 WL 1625642 (S.D. Ga. Apr. 21, 2016) (citing Lafler v. Cooper, 132 S. Ct 1376, 1385 (2012)).

Petitioner never suggests in the motion he would have rejected the plea deal that resulted in dismissal of the two firearm counts and, instead, taken the "straight up" option by

8

pleading guilty to all three counts merely so he could retain the unlimited right to appeal and collaterally attack his conviction and sentence. (See doc. no. 1, p. 13.) Likewise, nothing in the motion suggests Petitioner is currently willing to give up the benefits of the plea agreement by pleading "straight up" to all three counts in exchange for being relieved of the appeal and collateral attack waiver. (See id.) On the contrary, he wants to be relieved of the waiver burden while still retaining the dismissal benefit, as made clear from his prayer for relief that the Court merely "vacate sentence" as to the one drug offense to which he pled guilty so that he can "be sentenced without the appeal waiver provision." (Id.)

This is assuredly no oversight by Petitioner. No reasonable person in his position would ask to unravel the plea agreement in its entirety so that he could plead guilty on all three counts and be resentenced on all three counts. The PSI makes this abundantly clear in its explanation of the significant benefit Petitioner received by dismissal of the two firearm counts, as follows:

**Impact of Plea Agreement**

72. The defendant pled guilty to Count I of the Indictment and has been held accountable for all relevant conduct. Conviction as to Count 2 of the Indictment would have exposed the defendant to a mandatory consecutive term of imprisonment of 5 years and called for a guidelines range of 360 months to life imprisonment as is he is a career offender. Furthermore, conviction of count 3 of the Indictment, which has a maximum penalty of 10 years, would allow the defendant to be designated an Armed Career Criminal resulting in a mandatory minimum term of 15 years of imprisonment. Therefore, the plea agreement had a significant impact.

(PSI ¶ 72.)

For all of these reasons, Petitioner cannot establish prejudice and his motion is meritless. See Gourdine v. United States, No. CR610-001, 2015 WL 4605499, at *3 (S.D.

9

Ga. July 30, 2015), report and recommendation adopted, No. CR610-001, 2015 WL 4944949 (S.D. Ga. Aug. 19, 2015), appeal dismissed (Dec. 8, 2015) (finding petitioner did not establish prejudice because petitioner did not argue he would have taken "straight up" option if counsel had advised petitioner of option); Holmes v. United States, 2015 WL 402957 at *10 (E.D. Va. Jan. 28, 2015) (finding no prejudice where petitioner did not allege reasonable probability he would have pleaded guilty if he was aware of ability to enter "straight up" guilty plea without benefit of plea agreement).

### C. Petitioner's Guilty Plea was Knowingly and Voluntarily Entered.

Having determined Petitioner did not receive constitutionally ineffective assistance of counsel, the Court will lastly address any implication derived from the § 2255 motion that Petitioner's guilty plea was otherwise not knowingly and voluntarily entered. The record makes clear any argument to this effect is without merit.

#### 1. Standard of Enforceability of Guilty Pleas.

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional

sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2. Judge Hall's Colloquy with Petitioner Satisfied the Three Core Principles Required for Acceptance of a Guilty Plea.

Judge Hall informed Petitioner in clear terms of the charge to which he was pleading guilty, as well as the penalties that might be imposed in the event of Petitioner's conviction, and Petitioner testified he understood the charge and penalties. (CR 113-007, doc. no. 70, p. 7.) Petitioner also admitted to facts presented by the government that would satisfy the elements of the crime to which he was pleading guilty. (Id. at 16-17.) Judge Hall provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner

11

affirmed he understood his decision to plead guilty would result in a waiver of these rights. (Id. at 8-10.) Petitioner testified that no one had made him any promises to get him to plead guilty, nor had anyone forced, threatened, or pressured him to do so. (Id. at 3, 11.) Petitioner also testified that he had reviewed his case with his counsel and was satisfied with the assistance he had received. (Id. at 8.) Thus, Judge Hall's thorough plea colloquy ensured that Petitioner understood both the nature of the charges and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not argued, let alone shown a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea. See Dominguez Benitez, 542 U.S. at 83.

As such, Petitioner will not now be heard to claim that his guilty plea was not knowingly and voluntarily entered. Such assertions are contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding. See United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and

a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 2nd day of September, 2016, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA